# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | CRIMINAL ACTION |
|---|---|
| VERSUS | No. 15-260 |
| CLIFF DURIO | SECTION I |

## ORDER

Before the Court is pro se petitioner Cliff Durio's ("Durio") motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the following reasons, Durio's motion is denied.

## I.

On October 30, 2015, Durio was charged in a single-count indictment with knowingly possessing fifteen or more counterfeit and unauthorized access devices, including credit cards and gift cards, with the intent to defraud in violation of 18 U.S.C. § 1029(a)(3).[1] Durio pleaded guilty to the offense on July 14, 2016.[2]

According to the factual basis[3] to which Durio agreed at his rearraignment, Durio attempted to fly from New Orleans to Houston on August 2, 2013, checking luggage for his flight. When the bag Durio checked went through the Transportation Security Administration ("TSA") screening machine, TSA agents noticed an item that required further inspection. When TSA agents opened Durio's bag, they found a

---

[1] R. Doc. No. 1.
[2] R. Doc. No. 31.
[3] R. Doc. No. 32.

bundle of approximately 500 credit cards and contacted the Jefferson Parish Sheriff's Office ("JPSO") for assistance.

TSA agents provided JPSO officers with Durio's name. JPSO officers then went to the gate area for Durio's flight and began asking passengers for their names in an attempt to identify Durio. When asked for his name, Durio refused to answer and began walking toward baggage claim. A JPSO officer instructed Durio to stop, but Durio ignored the instruction. The JPSO officer called for backup, and as officers closed in on Durio, he fled.

Soon after, Durio was subdued, and a search incident to arrest yielded 46 gift cards, $2,050 in cash, a laptop computer, an iPad mini, an iPhone, and two other smart phones. A separate investigation revealed that Durio's checked luggage contained 738 access device cards embossed with names and account numbers.

The financial institutions that held the accounts corresponding to the numbers on the cards confirmed that the true account holders were not the individuals whose names appeared on the cards and that several of the accounts had recently had fraud reported. Investigators determined that, with respect to 549 of the cards from 12 different financial institutions, the total fraud loss was at least $35,096.92 and the total credit limit—i.e., the total potential loss—was at least $4,331,511.00.

On December 15, 2016, the Court sentenced Durio to a term of 78 months imprisonment. Durio timely appealed, and his appeal was dismissed on July 21, 2017. Durio filed the instant motion on April 30, 2018. The government does not contest the timeliness of Durio's § 2255 petition.

**II.**

Durio asserts two grounds for relief. First, he asserts various claims of ineffective assistance of counsel. Second, he contends that his sentence was imposed in violation of the sentencing guidelines and violates his constitutional rights. The Court considers each of Durio's meritless arguments in turn.

**A.**

Ineffective assistance of counsel claims are governed by the standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires a petitioner to prove both deficient performance and resulting prejudice. *Strickland*, 466 U.S. at 687.

Deficient performance is established by "show[ing] that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. In applying this standard, a "court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell v. Cone*, 535 U.S. 685, 702 (2002) (quoting *Strickland*, 466 U.S. at 689). In other words, "judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689.

A showing of prejudice requires "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. With respect to guilty pleas, the prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea

process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Thus, in challenging a guilty plea on grounds of ineffective assistance, a petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

The petitioner must satisfy both prongs of the *Strickland* test in order to be successful on an ineffective assistance claim. *See Strickland*, 466 U.S. at 687. A court is not required to address these prongs in any particular order. *Id.* at 697. If it is possible to dispose of an ineffective assistance of counsel claim without addressing both prongs, "that course should be followed." *Id.*

**i.**

Durio first contends that his counsel was ineffective because she pressured him into pleading guilty to a crime that he did not commit.[4] This argument is belied by Durio's own statements.

A defendant's representations at a plea hearing "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). This is because, "[s]olemn declarations in open court carry a strong presumption of verity." *Id.* Accordingly, "the subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Id.* Furthermore, "[w]hen a defendant pleads guilty relying upon his counsel's best professional judgment, he cannot later argue that his plea was due to coercion by counsel." *United*

---

[4] R. Doc. No. 61, at 16–17.

*States v. Lagrone*, 727 F.2d 1037, 1038 (11th Cir. 1984) (citing *Williams v. United States*, 443 F.2d 1151, 1153 (5th Cir. 1971)).

The Court entered into the following exchange with Durio and his counsel at Durio's rearraignment hearing:

> **THE COURT**: I'll now explain the rights that by pleading guilty you're waiving and giving up. You have a right to be represented by counsel either one you retain for yourself or one appointed for you by the Court. You would have the right to remain silent. You would have a right excuse me. You would be entitled to a speedy and public trial by a jury of 12 or by the judge if a jury trial is waived. Before you could be found guilty, the government would be required to prove at trial by competent evidence beyond a reasonable doubt the facts charged in the indictment. At trial the government would be required to confront you with witnesses upon whose testimony it relies to obtain a conviction, and you would have the right to cross examine those witnesses. At trial you would be presumed innocent until such time, if ever, the government establishes your guilt by competent evidence beyond a reasonable doubt. Before trial you would be entitled to compulsory process to call witnesses. If you were tried by a jury, all 12 jurors must agree on your guilt before you could be found guilty. If you're found guilty, you would have a right to appeal your conviction as well as your sentence. Do you understand if I accept your guilty plea, you would not be entitled to a trial and the government would not be required to prove you guilty?
>
> **THE DEFENDANT**: Yes, sir.
>
> **THE COURT**: Do you understand if you plead guilty and I accept the guilty plea, you would be waiving and giving up your right to trial and all the other rights I just explained to you?
>
> **THE DEFENDANT**: Yes, sir.
>
> **THE COURT**: Do you fully understand if I accept your guilty plea, there will be no trial, and I will simply enter a judgment of guilty and sentence you on the basis of your guilty plea?
>
> **THE DEFENDANT**: Yes, sir.

**THE COURT**: Are you willing to waive and give up your right to a trial by a jury or judge?

**THE DEFENDANT**: Yes, sir.

**THE COURT**: Are you pleading guilty because you're, in fact, guilty of the crime charged?

**THE DEFENDANT**: Yes, sir.

**THE COURT**: To put it another way, you're pleading guilty because you did the acts charged in Count 1 of the indictment?

**THE DEFENDANT**: Yes, sir.

**THE COURT**: Have you been influenced or persuaded to plead guilty because of any promise of leniency or other things made by anyone?

**THE DEFENDANT**: No, sir.

**THE COURT**: Have you been influenced or persuaded to plead guilty because of any threats made by anyone?

**THE DEFENDANT**: No, sir.

**THE COURT**: Other than what I stated to you in open court, has anyone, including your attorney, told you what sentence you might receive if I accept your guilty plea?

**THE DEFENDANT**: No, sir.

**THE COURT**: Have you had sufficient time to discuss with your attorney the facts of your case and any possible defenses you may have?

**THE DEFENDANT**: Yes, sir.

**THE COURT**: Are you entirely satisfied with the advice and services of your counsel?

**THE DEFENDANT**: Yes, sir.

. . .

**THE COURT**: Are there any promises, assurances, or secret agreements that you've been informed of with the government, the Court, or anyone else, that have been made in an effort to get you to plead guilty?

**THE DEFENDANT**: No, sir.

**THE COURT**: Do you understand that any discussions with your attorney or anyone else about sentencing guidelines are merely to provide rough estimates and that the Court's not bound by those discussions?

**THE DEFENDANT**: Yes, sir.

**THE COURT**: Has anyone connected with the government, anyone connected with law enforcement, or anyone else at any time, other than rough estimates of the sentencing guidelines, made any prediction or promise to you as to what your sentence will be?

**THE DEFENDANT**: No, sir.

**THE COURT**: Counsel, have you explained the charge to your client?

**MS. JUSSELIN**: Yes, sir.

**THE COURT**: Are you satisfied he knows what he's charged with?

**MS. JUSSELIN**: Yes, Your Honor.

**THE COURT**: Are you satisfied he understands the rights he's maintaining and giving up?

**MS. JUSSELIN**: Yes.

**THE COURT**: Have you had a full opportunity to investigate the facts of and the law applicable to the case, as well as any possible defenses he may have, and to advise and counsel with him?

**MS. JUSSELIN**: Yes, Your Honor.

**THE COURT**: Do you join with him in his decision to plead guilty?

**MS. JUSSELIN**: Yes, sir.

**THE COURT**: Are you satisfied he's pleading guilty voluntarily and understandingly with full knowledge of the consequences of his plea?

**MS. JUSSELIN**: Yes, Your Honor.

**THE COURT**: Have you made any representations to him as to the sentence I will impose?

**MS. JUSSELIN**: No, Your Honor. We have discussed that the maximum penalty is ten years. We have discussed the sentencing guidelines and how they may apply. But as I told Mr. Durio today, no one in this courtroom, including Your Honor, knows what sentence you will be imposing, which is why you're going to order the preparation of a presentence investigation report.

**THE COURT**: All right. Have you heard and understood the questions I just directed to your attorney and her answers?

**THE DEFENDANT**: Yes, sir.

**THE COURT**: Do you have any questions or comments with respect to those questions or her answers or any other statements made by her?

**THE DEFENDANT**: No, sir.

**THE COURT**: In connection with the defense of your case, did your counsel fail to investigate or follow up on anything that you requested that she investigate or follow up on, which would include, but not be limited to, the interviewing of witnesses and/or the locating and reviewing of documents?

**THE DEFENDANT**: No, sir.

. . .

**THE COURT**: Have you heard the evidence and facts that detail the charge against you?

**THE DEFENDANT**: Yes, sir.

**THE COURT**: Have you read the factual basis?

**THE DEFENDANT**: Yes, sir.

**THE COURT**: Do you understand the government's evidence?

**THE DEFENDANT**: Yes, sir.

**THE COURT**: Are the U.S. Attorney's statements correct?

**THE DEFENDANT**: Yes, sir.

**THE COURT**: Do you agree that is what you did?

**THE DEFENDANT**: Yes, sir.

**THE COURT**: Let me ask you again: Do you fully understand the charge against you?

**THE DEFENDANT**: Yes, sir.

**THE COURT**: Do you fully understand the consequences of your guilty plea?

**THE DEFENDANT**: Yes, sir.

**THE COURT**: Are you pleading guilty because you are, in fact, guilty?

**THE DEFENDANT**: Yes, sir.

**THE COURT**: Are you pleading guilty voluntarily and of your own free will?

**THE DEFENDANT**: Yes, sir.

**THE COURT**: Although you've indicated throughout these proceedings a desire to plead guilty, do you understand you still have the right to continue in your not guilty plea?

> **THE DEFENDANT**: Yes, sir.
>
> **THE COURT**: I'll ask you one last time: How do you wish to plead?
>
> **THE DEFENDANT**: Guilty.[5]

As previously stated, Durio's statements, made under oath in open court, are entitled to a strong presumption of verity. As illustrated by those statements, it was ultimately Durio's choice and Durio's choice alone to forego trial and plead guilty. Durio's counsel may have provided Durio with frank professional advice as to the merits of his case. Such advice, however, certainly does not equate with objective unreasonableness. Furthermore, Durio has not demonstrated that, but for counsel's alleged conduct, he would not have pleaded guilty, and that he would have insisted on proceeding to trial.

Next, Durio complains that his counsel failed to file unspecified motions and raise unspecified objections. This argument is simply frivolous. Durio does not state with any particularity which motions or objections his counsel should have brought nor does he describe the facts on which any such motion or objection could have been based. Durio, therefore, has not shown that his counsel's performance was deficient or that he was prejudiced by her assistance. *See Green v. Johnson*, 160 F.3d 1029, 142 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.").

---

[5] R. Doc. No. 55.

Finally, Durio argues that his counsel was ineffective in failing to file an appeal on his behalf.[6] This argument is directly contradicted by the record. At the conclusion of Durio's sentencing hearing, the Court asked Durio whether he wanted his counsel to file a notice of appeal.[7] Durio answered in the affirmative,[8] and Durio's counsel filed the requested notice of appeal the following day.[9] Thus, Durio's contention that his counsel did not file an appeal is patently false. Furthermore, the Court notes that Durio was appointed substitute counsel for purpose of appeal, and his appeal was dismissed *pursuant to his own motion*.[10]

---

[6] *Id.* at 17.
[7] R. Doc. No. 54.
[8] *Id.*
[9] R. Doc. No. 47.
[10] On July 21, 2017, Durio filed an unopposed motion to dismiss his appeal pursuant to Federal Rule of Appellate Procedure 42. In support of that motion, Durio appended a document, which he signed, stating his decision regarding appeal. That document states:

> I, Cliff Durio, have conferred with attorneys in the Federal Public Defender's Office . . . regarding the possible issues in my case and the consequences of appealing. I understand that I have the right to appeal the judgment and sentence in this case and to have the assistance of appointed counsel on appeal. I understand that I do not have to pay for the appeal. In light of that discussion, I hereby make the following decision regarding my appeal, and I authorize my attorney to file this document in the public records of the court:
>
> . . .
>
> I do not want to go forward with my appeal, and I instruct my attorney to file on my behalf a motion to dismiss the appeal.

11

Ultimately, Durio has not demonstrated that his Sixth Amendment right to effective assistance of counsel was violated. His § 2255 petition will, therefore, be dismissed in that regard.

**B.**

Durio also argues that his sentence was imposed in violation of the United States Sentencing Guidelines.[11] Durio points to the fact that, at his sentencing hearing, the Court sought clarification as to which version of the guidelines should have been applied to his sentence—the guidelines in effect at the time the offense was committed or the guidelines in effect at the time of sentencing.[12]

Pursuant to guideline § 1B.11(a), sentencing courts typically "use the Guidelines Manual in effect on the date that the defendant in sentenced." However, § 1B1.11(b) provides:

> If the court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the *ex post facto* clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed.

---

[11] R. Doc. No. 61, at 19–22.
[12] Durio's challenge to his guidelines calculation is foreclosed by Fifth Circuit precedent. *United States v. Segler*, 37 F.3d 1131, 1134 (5th Cir. 1994); *United States v. Vaughn*, 955 F.2d 367, 367 (5th Cir. 1992) (per curiam) ("Relief under [] § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. Nonconstitutional claims that could have been raised on direct appeal, but were not, may not be asserted in a collateral proceeding."). And, even if it were not, Durio still would not be entitled to habeas relief, as the Court applied the proper guidelines to his sentence.

In Durio's case, the Court and counsel determined that the guidelines in effect at the time of sentencing were actually more favorable to Durio than those in effect at the time he committed the offense.[13] Therefore, no *ex post facto* issue was presented, and the Court, adhering to § 1B.11(a), applied the guidelines in effect at the time Durio was sentenced. Hence, Durio's argument regarding his sentence is meritless.[14]

Accordingly,

**IT IS ORDERED** that the defendant's motion to vacate his sentence is **DENIED** and **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, June 4, 2018.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE

---

[13] R. Doc. No. 54, at 3–4.

[14] Durio also argues that the Court failed to adjust his offense level based on his role in the offense, his role in any obstructive conduct, the relationship between the counts of which he was convicted, and his acceptance of responsibility. This argument makes no sense. As the government notes, Durio was charged and convicted as a single defendant on a single count with no points added to his criminal offense level for his role in the offense or obstruction of justice. Moreover, Durio did, in fact, receive a three-level reduction for acceptance of responsibility.